IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-mc-00137-PAB

THE GREEN SOLUTION RETAIL, INC., a
Colorado Corporation;
GREEN SOLUTION, LLC, a Colorado Limited
Liability Company;
INFUZIONZ, LLC, a Colorado Limited Liability
Company; and
GREEN EARTH WELLNESS, INC., a dissolved
Colorado Corporation,

       Petitioners,

       v.

UNITED STATES OF AMERICA,

       Respondent

---

## PETITIONERS' REFILED RESPONSE AND REPLY TO UNITED STATES' MOTION TO DISMISS AND ENFORCE SUMMONSES

---

Petitioners, The Green Solution Retail Inc., a Colorado corporation, Green Solution, LLC, a Colorado limited liability company, Infuzionz, a Colorado limited liability company, Green Earth Wellness Inc., a dissolved Colorado corporation (collectively hereinafter referred to as "Petitioners "or "The Green Solution"), by and though their below signed counsel hereby respond and reply to Respondent, United States of America's, Motion to Dismiss and Enforce Summonses ("MTD"), as follows:

## I      FACTUAL AND PROCEDURAL BACKGROUND

The Petition to Quash Summonses ("Petition" or "Pet."), requests the Court quash all four of the summonses issued by Respondent to each of the four Petitioners, directed to Ms. Julie

Postlewaite of the Colorado Department of Revenue Marijuana Enforcement Division ("MED"). (Pet., Exhibit 1). The Petition contains extensive legal authority to show that the summonses do not meet the requirements of *United States* v *Powell*, 379 U.S. 48 (1964), supporting Petitioners argument that the summonses be quashed; and, alternatively, that the Court schedule an evidentiary hearing to determine whether a legitimate purpose of the summonses exists to support enforcement of the summonses and whether the summonses are relevant to any legitimate purpose. (Pet. Page 13). Petitioners incorporate by reference herein, all argument and facts set forth in the Petition.

The Petition is supported by the Declaration of Tim Sell, Chief Financial Officer for The Green Solution entities dated June 27, 2016. ("Sell Declaration"). Mr. Sell testified in his Declaration that based upon his education and experience as a CPA, a civil audit is for the purpose of (1) IRS to confirm income; and (2) the taxpayer to support deductions. (Pet. Paragraph 12, Sell Declaration, Paragraph 4)). Supporting this premise, Mr. Sell testifies that if a civil auditor such as Mr. Hewell uncovers evidence of criminal activity within the Tax Code, the boundaries are very clear and the auditor is to refer the matter to Criminal Investigation unit ("CI") and not continue the audit until after the criminal investigation is complete. (*Id.* at Paragraph 5).

Mr. Sell further states that "Very early on in the audit it became clear that Mr. Hewell had concluded, prior to the review of any documentation that he and his department concluded and found that GSR was illegally trafficking a controlled substance." (*Id.* at Paragraph 7). According to Mr. Sell, Mr. Hewell stated the purpose of the audit was "confirming their determination so all of GSR's otherwise lawful deductions could be taken away pursuant to 26 U.S.C. § 280E "(hereinafter "Section 280E"). (*Id.* at Paragraph 11)

As further noted, by Mr. Sell, "The Green Solution entities have cooperated with Mr. Hewell and the IRS during the audit, and have supplied them with bank records, and expense records including their general ledgers in order for the IRS to determine their income and expenses. (*Id*. at Paragraph 16).

Respondent essentially attempts to characterize the issuance of its summonses upon the MED as a routine and innocent effort to do "what the IRS always does." (MTD p.2)

However, Respondent does not provide any detail of what it may find if the METRC records are turned over to it.  It is clear why Respondent fails to provide this information.  This is because the applicable METRC forms have little, if anything, to do with the price of sales and costs of goods sold.  Attached hereto as Exhibit 3, is a copy of the Marijuana Enforcement Division's required forms for the applicable tax year (2013).    As can be seen by these forms, the sales price and costs of goods sold are items that are notably absent.  Rather, the primary information contained on these forms includes:

- The identity of the employees handling marijuana (Form 1000)

- Identification of patients (Form 1010)

- Status of Patients (Form 1040)

- Transportation Manifest, including the identification of transferor and transferee (Form 1020)

- Physical inventory of marijuana (types and weights in inventory) Form 1060.

Respondent's Motion is supported by a Declaration of Revenue Agent David Hewell. ("Hewell Declaration").  Mr. Hewell offers no explanation as to why the Petitioners are being audited, stating only that he was "assigned to conduct an examination of the federal tax

liabilities" of Petitioners for the two taxable periods ending December 31, 2013 and 2014. (*Id.* at Paragraph 4).

Providing little supporting detail, Mr. Hewell makes the conclusory statements that Petitioners "provided only a partial response for the requests *(Id.* at Paragraph 12), that they have provided only minimal, incomplete bank statements and redacted copies of accounting records (*Id.* at Paragraph 14) and have not proved enough information to substantiate the figures shown on their tax returns. (*Id.* at Paragraph 13).  Admitting documents including bank records, and expense records including the general ledger have been produce by Petitioners as stated by Mr. Sell, Mr. Hewell provides no explanation as to why the documentation provided is insufficient. Mr Howell further makes the unsubstantiated statement that Petitioners operate a "cash business." in an effort to justify the dramatic expansion of its audit (*Id*. at Paragraph 18).  Since Mr. Hewell acknowledges that the Petitioners have bank accounts and that these accounts have been produced, it is hard to take seriously that the Petitioners are engaged in a "cash business".

Importantly, Mr. Hewell acknowledges that he received bank statements and general ledger.  He does not explain why these are insufficient.  Also, attached hereto as Exhibit 4 is a true and correct copy of the Information Document Request made by Mr. Hewell.  METRC is notably absent.   The demand for METRC has little to do with income and expenses and much to do with the IRS' investigation into purported violations of the Controlled Substance Act.

The Respondent claims that the agent's motive should not be taken into consideration. However, this is not correct.   The Supreme Court has recognized that "examination of agent motive may be necessary to evaluate the good-faith factors of *Powell*, for example, to consider whether a summons was issued to harass a taxpayer."   *United States v. La Salle Nat'l Bank*, 437 U.S. 298, n. 17 (1978).

II.             **STANDARD OF REVIEW**

Pursuant to Fed. R. Civ. P. 12(b)(6).  every reasonable inference drawn from the pleadings and any supporting documents thereto must be made in favor of Petitioner and against Respondent. Mr. Sells' Declaration, disputes much of which is alleged by Mr. Howell. Specifically, Mr. Sell states that Mr. Howell stated that the purpose of the audit was to confirm that Petitioners were trafficking in controlled substances, which, as explained herein, is not a legitimate purpose for the summons under *United States v. Powell*.  To the extent there is a conflict in testimony, the Court should treat the Motion to Dismiss as a motion for summary judgment under Rule 56.    Under Fed.R.Civ.P. 56(a), if there is a dispute as to an issue of fact, the matter must proceed for the legal and factual reasons stated in the Petition.

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).   Here, there are substantial conflicts between the Sell and Howell Declarations, creating a dispute regarding the legitimacy of the purpose of the summonses and the relevance of the documents requested.

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff has pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation is a two-step analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 679–81.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

As set forth in the Petition, and herein, there substantial questions regarding the legitimacy of the purpose of the summonses, the relevance of the documents requested requiring, at a minimum, that the Court permit in camera review of the documents produced, as well as further inquiry and argument at a hearing.

## III   ARGUMENT

### A.  There Must Be a Finding of Illegality in Order for Section 280E to Apply.

Regardless of the Government's motivation, it is clear that the conduct must be illegal under the federal criminal drug laws in order for Section 280E to apply. Petitioner's argument is set forth in detail in the Petition, at pages (8-10).

Section 280E states as follows:

No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) **which is prohibited by Federal law or the law of any State in which such trade or business is conducted.**[1] (Emphasis Added).

---

[1] With Colorado constitutional Amendments 20 and 64, Colorado has legalized the sales and distribution of marijuana by state licensed dispensaries.  Thus, the question of whether Colorado prohibits the transactions is not relevant to Section 280E inquiry as such sales are now lawful.

26 U.S.C. §280E.

It is clear by the plain language of Section 280E that the "trafficking" of controlled substances must be illegal for Section 280E to apply.  The 1982 Senate Report (attached hereto as Exhibit 2) on Section 280E supports this conclusion.  The Senate Report states:

*"Explanation of the Provision*

"All deductions and credits for amounts paid or incurred in the ***illegal*** trafficking in drugs listed in the Controlled Substances Act are disallowed…" (Emphasis on "illegal" added, remaining emphasis in original.)

*Report of the Committee on Finance United States Senate on H.R. 4961,* p. 309.

As pointed out in the Petition, while currently attempting to retreat from a position taken in an  earlier matter, the IRS conceded this point in the *Feinberg v. Commissioner* lower court matter.  The Petition  references is a portion of a brief filed by the IRS in that matter which states:

"[A]pplication of section 280E requires the predicate determination that [the taxpayer] trafficked in a controlled substance, an act that constitutes a federal crime under the relevant statutes . . ."

*[IRS] Response to Petitioners ' Motion for Summary Judgment,* p. 9, attached hereto as Exhibit 5.

Thus, despite the Government's assertions to the contrary, the finding of illegal, criminal conduct is an integral part of Section 280E.  To this end, the IRS itself states:

"The Service cannot make determinations about the illegality of activities under laws other than the Internal Revenue Code."

Internal Revenue Manual, 4.76.50.9.3.4.

As the IRS plainly concedes in its own current manual, it does not have authority to determine whether a taxpayer has violated federal drug laws.

The IRS has well understood that it does not have authority to investigate unlawful acts outside the Tax Code.   Commissioner John Koskinen recently acknowledged that the IRS does not have jurisdiction to investigate illegal acts outside the Tax Code.  He said that if the IRS was to break down that wall, "we're going discourage a lot of people from paying the taxes they owe."  http://thehill.com/policy/finance/276206-irs-head-not-our-jurisdiction-to-go-after-illegal-immigrants   Agent Hewell is doing exactly what Commissioner Koskinen has publically stated the IRS cannot and should not do.

The IRS may not investigate or make findings that the Plaintiffs violated federal drug laws. Such an investigation is not part of the IRS's tax administration authority.  See, e.g., *Loving v. IRS,*  742 F.3d 1013 (D.C. Cir. 2014)(Congress did not delegate to IRS the authority under the Tax Code to require educational requirements of enrolled agents); *King v. Burwell,* 135 S. Ct. 2480, 2489 (2015)(" It is especially unlikely that Congress would have delegated [the decision to determine the definition of a 'State Exchange'] to the IRS, which has no expertise in crafting health insurance policy of this sort); *see also, Gonzales v. Oregon,* 546 U.S. 24 (2006)(Attorney General does not have substantive authority to factually determine that physicians who provide controlled substances for physician-assisted suicide violate the CSA).  Besides jurisdiction, the thread that runs through these cases is that IRS has expertise only in the Tax Code, and has neither the knowledge the expertise to determine a violation of federal drug laws outside of its jurisdiction.  "No matter how it is framed, the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, whether the agency has stayed within the bounds of its statutory authority."  *City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013). ."Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions--it does not, one might say, hide elephants in

8

mouseholes." *Whitman v. American Trucking Assns., Inc*., 531 U.S. 457, 468 (2001).  Given the national importance of the federal policy on marijuana, it is unlikely that Congress delegated to IRS the authority to determine whether taxpayers have violated federal drug laws.

### B.   Summonses are Not Issued for a Legitimate Purpose

Respondent agrees that the standards for review by the Court are found in *Powell*, *supra.,* including, among other criteria, that the summonses must serve a "legitimate purpose". In the instant case, enforcement of the summonses does not serve a legitimate purpose.  Inherent in determining the presence or absence of a legitimate purpose, is the issue of whether Respondent is acting in good faith.

Generally, Section 280E does not apply to taxpayers and is triggered *only* if the taxpayer is "trafficking in a controlled substance."  By its nature, Section 280E subjects only that limited class of taxpayers against whom it can be enforced, to a severe monetary penalty, resulting in substantially greater tax liability by disallowing all ordinary and necessary business deductions permitted to all other taxpayers.

Respondent contends that it needs the documents summoned from the MED simply to routinely verify income and expenses and to establish the "correctness" of Petitioner's returns and that "the purpose of the audit is to determine the correctness of Petitioners' federal tax returns and ascertain true federal tax liabilities.  (MTD, Page 3).   On the contrary, Respondent's actions can hardly be justified as "routine.  The penal statute the IRS is invoking is used only in those rare cases where a crime has been committed, and can hardly be described as "routine".  Respondent incorrectly asserts that "the IRS is not investigating Petitioners to impose any drug-related criminal liability on them." that (MTD, Page 2), knowing full well that is purposefully attempting to impose what can only properly be described as a "crime tax" on Petitioners.

Respondent is attempting to substantiate an illegitimate purpose; namely, to gather evidence against Petitioners to support its contention Section 280E applies, making the criminal penalty imposed by the statute applicable against Petitioners and substantially increasing its tax liability.

The auditing of businesses operating lawfully under Colorado law, as well as the statements made by Mr. Howell, indicates the Respondent's true purpose is not simply to verify income/sales of Defendant.  If this were the case, Respondent could simply augment the documents already produced, narrow request concerning substantiation of income, sales, and other information relevant information from Petitioners.  Instead, in an effort to trigger the application of Section 280E, Respondent requests information from third parties to substantiate purported "trafficking" in a controlled substance to utilize of the punitive aspects of the statute.

**C**. **The Information Sought by the Summonses is Not Relevant to a Legitimate Purpose**

Contrary to Respondent's contentions, (MTD page 11) the documents requested from MED do not contain relevant information. As discussed above, METRC has little, if anything, to do with income and costs of goods sold.  The summons power of the IRS on third parties should not be used to investigate purported violations of federal drug laws.

In *United States* v. *Coopers & Lybrand*, 550 F. 2d 615 (1976), the IRS sought the enforcement of a summons pursuant to 26 U.S.C. § 7602 from a third-party relating to the IRS' examination and audit of Johns-Manville, Inc. for its corporate tax returns.

The third party, Coopers & Lybrand received the IRS summons and responded by producing voluminous work papers and documents, but declined to disclose its audit program or the "tax pool analysis file."  The IRS filed its petition for judicial enforcement and summons pursuant to 26 U.S.C. § § 7402(b) and 7604(a).

In declining enforcement of the summons, the Court found that Johns-Manville's cooperation with the IRS in relation to the investigation was extensive and that "tax fraud had not been charged" and concluded that the IRS failed to make the requisite showing that the Audit Program documents were relevant to the tax investigation.

Recognizing § 7602, and citing *Powell*, the Tenth Circuit found that "investigative powers of § 7602 *are not without limitation*." and that a taxpayer "may challenge the summons on any appropriate grounds." *Coopers & Lybrand, supra.,* citing with approval *Reisman* v. *Caplin* 375 U.S. 440 at 449, 1964, 84 S. Ct. 508 at 513, 11 L. Ed. 2d 459. Under *Powell*, once a summons is challenged, the court must determine whether the summons seeks information relevant to legitimate purpose and is not meant to "harass" the taxpayers, or for any other purpose reflecting on the good faith of the particular investigation. *Powell* at 58. The Court also cited with approval *United States* v. *Matras* 487 F. 2d 1271 (8th Cir.) stating:

> "Certainly a taxpayer should not erect roadblocks for the purpose of frustrating or preventing the IRS from a full-scale inquiry of the liability of the taxpayer. By the same token, the government should not, for the mere sake of its convenience, impose unnecessary burdens on a taxpayer in conducting an audit or investigation for tax liability, particularly where, as here, there is no indication of a purpose to escape any tax liability. The term "relevant" denotes and encompasses more than "convenience." Consequently, we are not persuaded to fault the district judge for concluding that the government failed to sustain its burden of proof by alleging general need for a "roadmap." If we were to accede to the government's view, it is difficult to imagine corporate materials that might *no*t contribute to a more comprehensive understanding of the workings of the corporation, and thus, according to the government, be deemed relevant to the tax investigation."

*United States* v. *Coopers & Lybrand*, 550 F. 2d at 620-21, citing *Matras,* 487 F. 2d at 1274-1275, also citing *U.S.* v. *Theodore*, 479 F. 2d 749 (4th Cir. 1973).

Here, Petitioners have cooperated extensively with Respondent and have produced all bank records, indicating collection of revenue in their businesses.

The *Coopers* Court concluded that a summons *will* be deemed unreasonable an unenforceable if it is overbroad and disproportionate to the end sought, and endorsed the idea protections are "particularly appropriate where the demand for records is not directed to the taxpayer but to a third party who may have had some dealing with the person under investigation. *Id.*

Moreover, Petitioners have produced records substantiating all ordinary and necessary thus any legitimate purpose of the summons have been fulfilled. The documents sought from MED were not used in the preparation of taxes of federal tax returns by Petitioners as indicated by the Declaration of Timothy Sell. As admitted, Respondent merely wishes to gather information to impose the punitive measures of Section 280E.

Section 280E, as being enforced by the IRS is not a tax, but a criminal penalty. *Montana Dept. of Revenue v. Kurth Ranch*, 511 U.S. 767 (1994). This matter has similarities to the facts in the *Kurth Ranch* matter. After the Kurths pleaded guilty to drug charges, the Montana Revenue Dept. attempted, in a separate proceeding, to collect the state tax imposed on the possession and storage of dangerous drugs. Due to the enormity of the penalty, the Kurths were forced file for protection under the Bankruptcy Code. The U.S. Supreme Court held the Montana tax violated the constitutional provision against successive punishments for the same offense, as the assessment on harvested marijuana resulted in a tax *eight* times the product value, and was a form of double jeopardy, as federal fines and forfeitures had already been satisfied.

The *Kurth Ranch* Court, citing *A. Magano Co. v. Hamilton*, 292 U.S. 40, 46 and *United States v. Halper*, 490 U.S. 435 found that labels do not control a double jeopardy inquiry finding that a tax is not immune from double jeopardy inquiry simply because it is labeled as a "tax".

As with *Kurth Ranch,* the IRS here seeks to impose punitive nature of Section 280E and its deterrent purpose upon Petitioners, resulting in an extremely high monetary penalty. Importantly, Section 280E applies only in the case of illegal "trafficking" of a controlled substance.   This is like the "tax" the *Kurth Ranch* Court found to be conditioned upon "the commission of a crime" rather than the generation of revenue.  Thus, the "tax" is a criminal penalty for which criminal jeopardy attaches.  *Id.*  The IRS does not have jurisdiction to find criminal wrongdoing outside of the Tax Code or to invoke criminal penalties for violations of the CSA, and thus such a penalty is improperly assessed.

*Kurth Ranch* is instructive as it distinguishes between a "tax" and a "penalty"; a tax being revenue-raising in nature, a penalty being assessed for punitive and deterrent value. Furthermore *Kurth Ranch's* reasoning illustrates that 280E is a form of criminal jeopardy.  It only applies in the event that the taxpayer commits a criminal act.   Thus, Section 280E is in reality a "crime tax" which the IRS seeks to impose administratively without any judicial findings against the Petitioners.  Moreover, by imposing this suffocating, punitive penalty, a subsequent prosecution of the Petitioners will indeed subject them double jeopardy, being punished twice for the same offense.   Effectively, imposition of Section 280E on Petitioners will severely, if not completely, cripple their business, which is the true purpose of Respondent's actions, and not merely the traditional purpose of an audit – to assess the correctness of the income and deductions on the return.

### D.     The Information Sought from MED is Already in the IRS Possession or Can Be Provided from Other Sources than MED.

Respondent also agrees that another element it must demonstrate under Powell is that the information sought is not in the IRS' possession. (MTD, p.12-13).  While no documents have been received by Respondent from MED, it is incorrect for Respondent to contend that the

necessary "information" is not in its possession as contemplated by the *Powel* test. As noted, Mr. Howell's Declaration fails to acknowledge the length to which Petitioners have gone to produce bank records, receipts and general ledgers, from which net taxable income can be determined. Nor does Mr. Howell explain what precisely the IRS is looking for, why the information sought, and to the extent additional information may be related to a legitimate purpose, why it cannot obtain the information from other sources, instead of conducting its *de facto* criminal investigation.

### E.  An Evidentiary Hearing Should Be Required

Since the IRS is seeking to invoke a "crime tax" and place the Petitioners in criminal jeopardy under the Controlled Substances Act without any authority to enforce the CSA, the actions by Mr. Hewell are not in good faith and should be considered harassment.  At the very minimum, the Court should hold a hearing to determine whether investigation by the IRS of taxpayers to determine whether they are violating the CSA is a legitimate purpose or unlawful harassment.

A proceeding to enforce summonses is an adversary proceeding under the Federal Rules of Civil Procedure and under Rule 45 (d) (3) (iv).  *Coopers & Lybrand,* at 620.   Under Fed.R.Civ.P. 45(d), the Petitioners may request the summonses be modified when an undue burden, such as providing information which may be used later in a criminal investigation, is present.  *La Salle, supra.*

Respondent contends that that Petitioners have failed to meet the burden necessary to require a hearing.  However the Sell Declaration and the correspondence of David Hewell shows that the IRS is indeed attempting to gather evidence to confirm its suspicions that the Controlled Substances Act has been violated; i.e., conducting a criminal investigation. Additionally, without

a hearing the court is unable to explore the reasonableness' of the Respondent's request and how the Court may potentially narrow the scope of the documents requested.

Without a more precise description of information needed being detailed by Mr. Hewell in his Declaration, and with no discovery to date being completed yet by the parties, there is little ability for Petitioners to attempt to request that Respondent's request be narrowed in any appropriate fashion, making a hearing necessary to properly narrow the scope of the summonses to the information truly necessary to fulfill the legitimate purpose test of Powell. The IRS cannot simply go on a fishing expedition through third party records. *United States v Harrington,* 388 F.2d 520,523(2nd Cir. 1968)

**F.        Conclusion**

Respondent's investigatory power is not unlimited, and is subject to review by this Court. In order to properly review the necessity, motives, and other relevant information concerning the duplicative and unnecessary requests made by Respondent, Petitioners request a hearing before this Court.

**WHEREFORE**, Petitioners request that this Court quash the summonses attached to the Petition to Quash, or alternatively permit an in camera review by the Court of the METRC documents to determine whether the summonses seek relevant information, or are otherwise overly broad or unreasonable. Petitioners request a hearing be held.

**DATED**: October 11, 2016

_____s/ James D. Thorburn_____
James D. Thorburn,
Attorney for the Petitioners
THORBURN WALKER, LLC
5460 South Quebec Street, Suite 330
Greenwood Village, Colorado 80111
(303) 646-3482
jthorburn@thorburnwalker.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of October, 2016 I electronically filed the above and foregoing using the CM/ECF system which will send notification to such filing to the following e-mail addresses:

LINDSAY L.CLAYTON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044

_/s/ James D. Thorburn_