IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-mc-00137-PAB

THE GREEN SOLUTION RETAIL, INC., a
Colorado Corporation;
GREEN SOLUTION, LLC, a Colorado Limited
Liability Company;
INFUZIONZ, LLC, a Colorado Limited Liability
Company; and
GREEN EARTH WELLNESS, INC., a dissolved
Colorado Corporation,

       Petitioners,

       v.

UNITED STATES OF AMERICA,

       Respondent.

**UNITED STATES' REPLY TO RESPONSE TO
MOTION TO DISMISS AND ENFORCE SUMMONSES**

The United States of America replies to Petitioners' response to the United States' motion to dismiss and enforce summonses as follows:

**Table of Contents**

INTRODUCTION ................................................................................................................. 2
DISCUSSION ....................................................................................................................... 2
   I.   Petitioners Continue to Inappropriately Conflate This Civil Tax Audit with a Non-Existent Criminal Drug Investigation. ................................................................................................. 2
   II.   Petitioners Fail to Refute that the Summonses Meet the *Powell* Standard ....................... 4
      A.   Legitimate Purpose: Section 280E is a tax provision that the IRS must enforce, not a criminal penalty. ............................................................................................................. 4
      B.   Relevance: The information Petitioners provide about METRC records shows that they are relevant to a legitimate civil audit. ................................................................... 7
      C.   Possession: Petitioners admit that the IRS does not have the METRC records. .......... 8
      D.   All *Powell* factors are met. ............................................................................................ 9
   III.   No Hearing is Required to "Narrow" the Summonses or Grant the Motion to Dismiss and Enforce ........................................................................................................................ 9
CONCLUSION..................................................................................................................... 10

1

## INTRODUCTION

Petitioners' quarrel in this case is not with the IRS, but rather with Section 280E of the Internal Revenue Code.[1] This Court must decide whether the IRS's audit of marijuana businesses, in which it must apply Section 280E, is improper simply because that statute exists. The essence of Petitioners' argument is that it is unfair and inappropriate for the IRS to apply Section 280E and, as a result, the IRS should be prohibited from fully auditing marijuana businesses. Petitioners' argument finds no support in the law. In an attempt to bolster their case, Petitioners continue to conflate a civil tax audit with a criminal drug investigation. Petitioners' arguments are inapplicable in these civil proceedings, and fail to refute that the IRS meets the *Powell* factors supporting enforcement of the summonses at issue. As a result, this Petition (and other related Petitions) must be dismissed and the summonses enforced.

## DISCUSSION

### I. *Petitioners Continue to Inappropriately Conflate This Civil Tax Audit with a Non-Existent Criminal Drug Investigation.*

In their original petition and again in their response, Petitioners inappropriately conflate the IRS's civil tax audit with a criminal drug investigation. Petitioners take various authorities and statements out of context in an attempt to make their case. First, Petitioners repeatedly cite allegations made by their Chief Financial Officer, Tim Sell, for the proposition that the only purposes for a civil audit are to "confirm income" and "support deductions," and that the only purpose of the civil audit at issue here is to confirm that Petitioners are trafficking in marijuana. [Dkt. # 16] at 2-3. Mr. Sell's declaration is not evidence that the IRS is operating a surreptitious criminal investigation under the Controlled Substances Act. First, Mr. Sell has no personal

---

[1] Unless otherwise stated, all "Section" references are to Title 26 of the United States Code, also known as the Internal Revenue Code of 1986, as amended.

knowledge of the IRS's internal deliberations in this audit; therefore, he is not competent to refute Revenue Agent Hewell's declaration. Second, as explained in detail in the United States' Motion to Dismiss, it is not improper for Revenue Agent Hewell to make the predicate determination that Petitioners traffic in marijuana in order to apply Section 280E. [Dkt. # 8] at 8-9. Given how openly Petitioners operate their marijuana business, it borders on absurd for them to contest that this is what they do.

Next, Petitioners cite an isolated provision of the Internal Revenue Manual that they say prohibits the IRS from making predicate determinations of illegality. [Dkt. # 16] at 7, citing I.R.M. 4.76.50.9.3.4, *available at* http://www.irs.gov/irm/. What Petitioners fail to note, however, is that this is a very specific provision concerning tax-exempt organizations that conduct gaming activities. Petitioners do not allege that they are tax-exempt or that they are engaged in gaming; therefore, this provision does not apply to Petitioners. Furthermore, Petitioners have taken the statement entirely out of context, ignoring the very next provision which instructs examiners as follows:

> However, If an IRC section 501(c)(3) organization engages in an activity which clearly violates state law (e.g., the state requires a gaming permit and the organization does not have one), the examiner should raise the illegality issue. The illegal activity may be used as one basis for proposing revocation of exempt status, but it should not be the sole basis. If the organization is engaged in an illegal activity, there is usually a concomitant private benefit, inurement, or substantial non-exempt purpose. Any proposed revocation should address all issues fairly presented by the facts of the particular case.

I.R.M. 4.76.50.9.3.5, *available at* http://www.irs.gov/irm/. Thus, the very provisions Petitioners cite explicitly instruct examiners to consider illegal gaming activities.

Finally, Petitioners cite to comments made by IRS Commissioner John Koskinen concerning illegal use of Social Security numbers. [Dkt. # 16] at 8. First, it is unclear how

3

remarks by the IRS Commissioner could overrule Section 280E, a statute passed by Congress. Nonetheless, even assuming away this separation of powers issue, the comments are inapposite: they simply state that it is not the IRS's responsibility to enforce laws related to fraudulent use of Social Security numbers to gain employment. *See*, http://thehill.com/policy/finance/276206-irs-head-not-our-jurisdiction-to-go-after-illegal-immigrants. The article cited by Petitioners reflects no comment whatsoever about marijuana businesses. Nor did Commissioner Koskinen state that the IRS cannot make a determination that someone has used a Social Security number illegally: to the contrary, he confirmed that the IRS would "look into people" who use fraudulent numbers to get jobs and file taxes. *Id.* Thus, nothing about Commissioner Koskinen's comments suggests that the IRS cannot make the predicate determination that Petitioners traffic in marijuana.

In sum, none of the sources Petitioners cite shows that the IRS is engaged in some kind of unauthorized criminal drug investigation. Contrary to Petitioners' allegations, Congress has explicitly charged the IRS with making a civil determination, for tax purposes, as to whether or not Petitioners are engaged in the sale of marijuana. *See,* Section 280E. The mere fact that the IRS is now doing what Congress has instructed it to do is not evidence that the IRS is engaged in a clandestine criminal investigation of Petitioners under the Controlled Substances Act.

## II. Petitioners Fail to Refute that the Summonses Meet the Powell Standard

### A. *Legitimate Purpose: Section 280E is a tax provision that the IRS must enforce, not a criminal penalty.*

Petitioners argue that Section 280E is "not a tax, but a criminal penalty." In support, they cite a case dealing with a Montana law that imposed a very high tax on the possession and storage of dangerous drugs after the taxpayer was arrested. *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 770 (1994). Yet far from supporting Petitioners' claims, that case reaffirms the principle that "the unlawfulness of an activity does not prevent its taxation." *Id.* at

4

778. The problem in *Kurth Ranch* was not Montana's tax itself, but how it was imposed. Indeed, Montana "no doubt" could have collected its tax on marijuana possession "if it had not previously punished the taxpayer for the same offense, or, indeed, if it had assessed the tax in the same proceeding that resulted in his conviction." *Id.* Instead, Montana imposed a tax of "more than eight times the drug's market value," and imposed it "only after the taxpayer has been arrested." *Id.* at 780-782. Accordingly, the Court concluded that the tax was a "concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of double jeopardy analysis." *Id.* at 783.

Section 280E differs in critical respects from the legislative provision at issue in *Kurth Ranch*. First, Section 280E is not a tax, but rather a provision that denies deductions. This distinction is critical, as deductions are a matter of legislative grace to which no taxpayer is necessarily entitled. *E.g., New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934) (explaining that "[t]he power to tax income. . . .is plain and extends to the gross income. Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed."). Thus, it is not at all clear that Section 280E can even be considered a "penalty" like the tax at issue in *Kurth Ranch*.

Second, unlike the Montana tax, Section 280E does not depend on a charge or conviction for criminal conduct. While the statute references the Controlled Substances Act, there is no requirement whatsoever that a taxpayer actually be prosecuted or convicted in order to be subject to Section 280E. Accordingly, the result of Section 280E is more like the provision at issue in *United States v. Sanchez*, which addressed a law imposing a "special tax ranging from $1 to $24 on 'every person who imports, manufactures, produces, compounds, sells, deals in, depenses [*sic*], prescribes, administers, or gives away marihuana.'" 340 U.S. 42, 43 (1950). Such a tax is

"a legitimate exercise of the taxing power despite its collateral regulatory purpose and effect" of discouraging marijuana businesses. *Id.* at 45. Further, the tax was not a criminal penalty because it was not conditioned upon the commission of a crime and was collected through "civil procedure." *Id.*; *see also*, *Simmons v. United States*, 476 F.2d 715, 718 (10th Cir. 1973) (upholding tax addressed in *Sanchez* as "valid civil liability" even as imposed on "unlawful possessor of marihuana.").

Petitioners also ignore the numerous cases decided since *Kurth Ranch* that distinguish state taxes on illegal drug activity where those taxes are not conditioned on a prior arrest or conviction. *See*, *Simson v. Bouker,* 249 F.3d 1204 (10th Cir. 2001) (addressing tax on dealers in marijuana and other controlled substances imposed by Kansas Drug Tax Act); *Vick v. Williams,* 233 F.3d 213 (4th Cir. 2000) (stating that "*Kurth Ranch* does not stand for a general principle that all drug taxes are punishment-rather than a civil penalty. . ."), *Padavich v. Thalacker*, 162 F.3d 521 (8th Cir. 1998), *Marigold v. Comeaux*, 945 F.2d 409 (Table), 1991 WL 190111, *1 (9th Cir. 1991). Like the state taxes at issue in these cases, Section 280E does not depend on any prior criminal prosecution or conviction. Rather, the IRS makes its own civil determination of whether the provision applies. Therefore, Section 280E is akin to the state tax laws considered by many jurisdictions, including the Tenth Circuit: it lacks the "'unusual features' which rendered the tax in *Kurth Ranch* so punitive in nature as to transform it into a criminal punishment." *Simson*, 249 F.3d at 1211.

Third, even assuming Petitioners' arguments were meritorious, *Kurth Ranch* provides them with no relief in this proceeding. At most, it is a dispute for a later day: if Petitioners are subsequently investigated and prosecuted under the Controlled Substances Act, they may argue that double jeopardy prohibits the proceeding. Petitioners appear to admit as much. [Dkt. # 16] at

6

13. At this stage, Petitioners' argument is entirely hypothetical: there is no criminal proceeding, and the IRS has not even finished its audit. Thus, Petitioners' argument must be rejected.

Finally, Petitioners argue that the IRS's "true purpose" is to use Section 280E to "severely, if not completely, cripple their business." Petitioners provide no evidence for this assertion, and it is refuted by the Declaration of Revenue Agent Hewell. Moreover, Petitioners are not the only marijuana business operating in Colorado. Many such businesses comply with Section 280E without going out of business. Indeed, the sale of marijuana in Colorado is almost a $1 billion industry. *E.g.*, http://www.thecannabist.co/2016/02/09/colorado-marijuana-sales-2015-reach-996-million/47886/. As a matter of fairness, the IRS must enforce Section 280E equally on all of these businesses. That includes Petitioners. The IRS has no dog in this fight beyond ensuring that the tax laws are fairly and evenly applied. The IRS's interest in obtaining the summoned material is a legitimate one.

> B. *Relevance: The information Petitioners provide about METRC records shows that they are relevant to a legitimate civil audit.*

Petitioners continue to argue that METRC forms are irrelevant to a civil tax audit. However, the information that Petitioners provide, including a "Forms Matrix" and sample forms, refutes their theory. *See*, [Dkt. # 16-1]. This information in fact shows that the METRC records will substantiate things like "transfers, patient sales and wholesales transactions" ([Dkt. # 16-1] at 4, 16), the amount of inventory on the premises on any given day ([Dkt. # 16-1] at 14), amounts sold to customers ([Dkt. # 16-1] at 17), and amounts transferred from grow facilities to retail locations ([Dkt. # 16-1] at 18). This information is unquestionably relevant to an audit: the IRS is entitled to verify whether the volume of business that Petitioners reported to Colorado matches the volume of business they reported to the federal government. *See, e.g., United States v. Insurance Consultants of Knox, Inc.,* 187 F.3d 755, 761 (7th Cir. 1999) (affirming

enforcement of summons for inventory records, among other documents); *United States v. Davis*, 636 F.2d 1028, 1033 fn2 (5th Cir. 1981) (same).

To take a hypothetical example, the Green Solution's website shows that it sells a "Regular Cone Multi-Pack," described as "five strain specific pre-rolled joints totaling 4.75 grams" for $44.95. *See,* https://www.tgscolorado.com/prerolls/regular-cone-multi-pack (retrieved Oct. 20, 2016). Let's assume that the Green Solution sold 1,000 Regular Cone Multi-Packs in 2013 to buyers who paid in cash, and that prices have been relatively steady. The METRC records should include these sales. This information would assist the IRS in verifying whether Petitioners have accurately reported their income for federal tax purposes by allowing the IRS to verify whether and where Petitioners reported the $4,495 made from the sale of Regular Cone Multi-Packs in 2013. Notably, if the METRC records reflect the sale of 4,750 grams, but Petitioners only reported $1,000 in gross revenue, this would flag a potential adjustment and/or an issue for the IRS to further investigate. Petitioners offer no logical reason for why the inventory data from the METRC records is irrelevant to a civil tax audit.

   C. *Possession: Petitioners admit that the IRS does not have the METRC records.*

Petitioners do not dispute that the IRS lacks the METRC records, but instead argue that their own partial production of bank and accounting records should obviate the government's request. [Dkt. # 16] at 4. This is not the standard. The government does not have to prove that Petitioners' own production was somehow "insufficient." *Id.* Rather, the government is entitled to compare the data Petitioners reported to Colorado with the data they have provided to the IRS thus far. Indeed, even if Petitioners had provided their own copies of the METRC records, the government would still be entitled to summon them from Colorado in order to compare them and ensure their accuracy. *E.g., Liberty Financial Services v. United States*, 778 F.2d 1390, 1393 (9th Cir. 1985) (finding that the IRS is "entitled to compare for accuracy" the same records held by

different parties). Yet the case here is even stronger for the government, since the IRS does not have the METRC records from any source. Petitioners' response effectively concedes that the third *Powell* factor is met.

    D.  *All* Powell *factors are met.*

Petitioners do not contest that the IRS followed all administrative steps in issuing the summonses. Thus, all four components of the *Powell* test are met, and the summonses should be enforced.

### III. *No Hearing is Required to "Narrow" the Summonses or Grant the Motion to Dismiss and Enforce*

Petitioners' final argument is that the Court should hold a hearing to allow it to modify the summonses. [Dkt. # 16] at 14-15. Yet the requests in the summonses are already quite narrow. For the years and entities under examination, the summonses seek: (a) METRC Annual Gross Sales Reports; (b) Annual Inventory Reports; and (c) Year-end totals for all in-house inventory tagged with plant and product tags. [Dkt. # 17-1]. Petitioners offer no credible explanation for why the Court needs an evidentiary hearing to interpret these requests. They are neither overly broad, nor difficult to understand. The Court can make a decision on the record before it.

Nor is an evidentiary hearing appropriate simply as a summons rewriting exercise. As already explained in the United States' opening brief, to be entitled to a hearing, a taxpayer must come forward with sufficient facts or circumstances to support an inference of institutional bad faith. [Dkt. # 8] at 15. Petitioners have failed to meet this standard because such facts or circumstances do not exist here. Accordingly, the Court need not hold a hearing in order to rule in favor of the United States.

## CONCLUSION

For the foregoing reasons, the petition should be dismissed without a hearing, and the Court should issue an order enforcing the summonses issued to MED.

Dated:  October 24, 2016                    Respectfully submitted,

CAROLINE D. CIRAOLO
Principal Deputy Assistant Attorney General

*/s/ Lindsay L. Clayton*
LINDSAY L. CLAYTON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-307-2956 (v)
202-307-0054 (f)
Lindsay.L.Clayton@usdoj.gov

Of Counsel:
BOB TROYER
Acting United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

    James D. Thorburn (jdt@thorburnlaw.com)
    Richard A. Walker (rwalker@thorburnlaw.com)
    *Counsel for Petitioners*

                                    */s/ Lindsay L. Clayton*
                                    LINDSAY L. CLAYTON
                                    Trial Attorney, Tax Division
                                    United States Department of Justice